IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  11-cv-01568-LTB

JULIE A. PERONE,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

## ORDER

_____

Plaintiff, Julie A. Perone, appeals from the Social Security Administration ("SSA")

Commissioner's final decision denying her application for disability insurance benefits, filed

pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Jurisdiction is proper

under 42 U.S.C. § 405(g).  Oral arguments will not materially aid in the resolution of this appeal.

 After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the

SSA Commissioner's final order.

## I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her application

for Social Security disability insurance benefits.  Plaintiff initially filed her application in the

State of Florida in February 2007, but her request for a hearing was denied by a Florida

Administrative Law Judge (an "ALJ").  After moving, Plaintiff filed a new application in

November 2008, requesting that she be allowed to reopen her initial application here in

Colorado. [Administrative Record ("AR") 238]

Her new application was denied at the administrative level on May 14, 2008. [AR 57, 60] An ALJ subsequently conducted a hearing on November 17, 2009, and issued a written ruling on January 5, 2010, denying Plaintiff's application on the basis that Plaintiff was not disabled because she could perform her past work as a card dealer from June 1, 2005 – her alleged amended onset date – through December 31, 2007 – her date of last insured (Step Four). [AR 11-22, 230]  On April 20, 2011, the SSA Appeals Council denied Plaintiff's request for reconsideration, making the denial final for the purpose of judicial review. [AR 1]  Plaintiff timely filed her complaint with this court seeking review of the SSA Commissioner's final decision.

## II.  FACTS

Plaintiff was born on December 10, 1964, and was 44 years old at the time of her hearing. [AR 28, 57, 158, 210]  She graduated from high school, and had trained to deal blackjack. [AR 28]  Her prior work history consists of being a blackjack dealer. [AR 39-40, 206]  Plaintiff alleges that she became disabled on June 1, 2005, due to pain in her lower back from bulging discs and degenerative disc disease. [AR 69, 205]

The medical records reveal that prior to her alleged onset date, Plaintiff was treated for chronic back pain by Michael D. Daubs, M.D., in 2001 and 2002. [AR 380-99]  A January 2001 MRI of the lumbar spine showed degenerative changes and small disc protrusion at L3/L4 and L4/L5 without significant neural impingement. [AR 398-99, 381, 395]

In August 2002, Plaintiff saw Thomas Dunn, M.D., an orthopedic surgeon, who examined Plaintiff and diagnosed disc disruption of the lumbar spine  – which limited her ability to sit, stand, bend, stoop, or lift – with chronic right piriformis tendinitis. [AR 267, 276]  At that

2

time he opined that although Plaintiff was able to perform some activities, based on her diagnosis and the severity of her symptoms, "she reasonably is at a total permanent disability status." [AR 267]  In May 2003, Dr. Dunn indicated that Plaintiff "remain[ed] off work on a permanent disability status" and "[b]ecause of chronicity of pain and the need for narcotic analgesics and muscle relaxants, she is considered unemployable." [AR 273]  In January 2004, Dr. Dunn concluded that Plaintiff did not have a surgical lesion and he recommended treatment with a physiatrist. [AR  269]

Plaintiff then began seeing Joseph M. Gnoyski, M.D. – a physical medicine and rehabilitation specialist – on April 21, 2004, for pain management. [AR 313-15]  At that time she reported a two-and-one-half-year history of chronic pain in her lower back and right leg treated with pain medications, injections every three months, and a TENS unit. [AR 313]  At that time she was taking Lortab, Soma, and Arthrotec. [AR 314]  Dr. Gnoyski diagnosed:  piriformis syndrome on the right, status post multiple injections for right piriformis, and three bulging lumbar discs as reported by Plaintiff. [AR  315].  He refilled her prescriptions and recommended physical therapy.

From June 2004 through April 2005, Dr. Gnoyski treated Plaintiff for her pain with injections, physical therapy, a TENS unit, and continued prescription medications. [AR 333-44]  During that time,  Plaintiff underwent a whole body bone scan in August 2004, the results of which were unremarkable – "no abnormal uptake is seen in the spine."  [AR 316]  A November 2004 MRI showed degenerative disc disease with diminished signal intensity and diminished disc space; specifically, L4/L5 bilateral foraminal stenosis and L3/L4 disc protrusion. [AR 337-38, 333]  Dr. Gnoyski's examination in December 2004 revealed full strength in the muscles of

3

the legs and hips, symmetrical reflexes, and good mentation, affect, attention, and concentration. [AR 337]  Dr. Gnoyski continued to manage Plaintiff's medications in 2005; a February 2005 examination showed her strength for quadraceps and dorsiflexors at 4-/5 with pain, and a April 2005 examination was marked by a severe antalgic gait. [AR 335-36, 333-34]

Plaintiff's amended alleged onset date is June 1, 2005.  The medical records at that time show that she was seeking continued treatment from Dr. Gnoyski.  Thereafter, on July 20, 2005, Plaintiff reported only temporary relief from injections and complained of severe pain, moderate depression, and mild anxiety. [AR 331]  Dr. Gnoyski continued her medications and referred her to Charlie C. Huynh, M.D., for an epidural steroid injection [AR 329-32]  The next day, Dr. Huynh examined Plaintiff and found she had an antalgic gait, weakness ("4/5") in the right hip flexor and knee extensor muscles, absent reflexes in the right lower extremity, and tenderness over the sacroiliac joint. [AR 329]

On October 17, 2005, Plaintiff saw Dr. Gnoyski, and reported that she had been bedridden with "excruciating" low back pain. [AR 327]  Later that month, Dr. Huynh administered an epidural steroid injection to Plaintiff in the right sacroiliac joint, which provided temporary relief. [AR 323-25]  Plaintiff  underwent MRI of the lumbar spine on October 24, 2005, which showed bulging discs at two levels with mild canal stenosis and mild foramina narrowing. [AR  321-22]

In December 2005, Dr. Gnoyski noted that Plaintiff's MRI showed possible internal disc disruption. [AR 325-26]  He referred her back to Dr. Dunn, who examined Plaintiff on December 28, 2005, and found she had mild paralumbar muscle spasms, limited range of motion of her back, and no neurological deficits. [AR 266]  Dr. Dunn diagnosed probable disc disruption

4

contributing to mechanical back pain, and he concluded that her pathology posed no threat to her neurologic status and she did not require surgery as long as she could live with her symptoms. [AR 266]

The next month, on January 13, 2006, Plaintiff complained of "horrible pain" to Dr. Gnoyski. [AR 345]  His examination revealed severe antalgia, marked sensitivity in the buttock area, reduced strength in the hip flexor, quadriceps, and dorsiflexor muscles, and good mentation, affect, attention, and concentration. [AR 345]  A January 25, 2006, examination revealed full strength in the upper extremities, reduced ("4/5") strength in the lower extremities, and no other neurological deficits. [AR 347]

In March 2006, Plaintiff underwent electro-diagnostic studies, which showed no radiculopathy, plexopathy or neuropathy. [AR 349-53]  During a June 2006 examination, Plaintiff reported her pain was improving, but was still at 8-9/10 and Dr. Gnoyski noted an antalgic gait. [AR 319-320]  In September 2006, Dr. Gnoyski examined Plaintiff and found she was walking better overall and she doing "quite a bit better" after receiving chiropractic massages. [AR 353]  In December 2006, Dr. Gnoyski found Plaintiff had muscle spasms in the lumbosacral region, a limp on the left, and normal mood, affect, cognitive functioning, and coordination. [AR 367-68]  During this time, Dr. Gnoyski continued Plaintiff's prescription medications, and encouraged her to get physical therapy and routine exercise, and to continue chiropractic services. [AR 367-79]

In March through December of 2007, Dr. Gnoyski continued to treat Plaintiff's pain with medications and injections. [AR 369-378]  His notes indicate no significant examination findings, although Plaintiff reported having problems with general tasks, such as grocery

5

shopping. [AR 369]  In June 2007, Dr. Gnoyski noted that Plaintiff walked with severe antalgic on the right, had negative straight leg raising tests, and had full strength in all muscle groups. [AR 371-72]  During this time Plaintiff again saw Dr. Dunn, in October of 2007, who indicated in his notes that an August 2007 MRI showed disc disruption contributing to "axial mechanical back pain." [AR 265, 439]  In September and December of 2007, Dr. Gnoyski found she had full strength in the lower extremities and negative straight leg raising tests bilaterally. [AR 375-79]

On December 21, 2007, Anthony Ruggeroli, M.D., performed a discography as referred by Dr. Dunn.  The diagnosis was significant degenerative changes at L4-5 and a 2-level lumbar disc disruption which showed a "a positive concordant pain pattern at the L3-L4 level." [AR 264, 436-8]  In her examination as follow-up to the discography, Dr. Dunn found that Plaintiff was neurologically intact, had no motor or sensory deficits, and had full strength in the lower extremities. [AR 264, 435]  He opined that Plaintiff was a candidate for anterior-posterior reconstructive surgery, based on her discography results, and he indicated that she was going to take some time to consider this option. [AR 264, 435]

Plaintiff's date last insured for disability insurance benefits was December 31, 2007.  Anthony LoGalbo, M.D., a state agency medical consultant, reviewed her medical records and filled out a Physical Residual Functional Capacity Assessment for Plaintiff as of December 31, 2007, her date of last insured. [AR 473-80]  Dr. LoGalbo opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for six hours and sit for six hours in an eight-hour workday; could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and could never climb ladders or scaffolds. [AR 473-80]

Dr. Gnoyski continued to treat Plaintiff with medications through 2008. [AR 496-505] An April 2008 examination found seated straight leg raising negative bilaterally to 90 degrees, symmetrical reflexes, no muscle atrophy, and 4/4 strength in manual muscle testing. [AR 496-98]  In June 2008, Dr. Gnoyski opined – in a Medical Source Statement of Ability to Work-Related Activities (Physical) – that Plaintiff could lift 10 occasionally; sit for two hours (20 minutes continuously), stand for one hour (15 minutes continuously), and walk for one hour (15 minutes continuously) in an eight-hour workday; occasionally reach, push/pull, and use foot controls; frequently finger and feel; occasionally climb stairs and ramps, balance, and stoop; and never climb ladders or scaffolds, kneel, crouch, or crawl. [AR 441-47, 490-95]  In addition, he opined that Plaintiff had "too much pain" to concentrate or sit/stand for prolonged periods, and she was "unable to work." [AR 446]

In January 2009, Dr. Gnoyski added Cymbalta to Plaintiff's medication regimen, and in April 2009, Plaintiff indicated that her pain "was down to about 5/10." [AR 452, 457]  At this time Dr. Gnoyski assessed Plaintiff with major depression. [AR 453, 450]  A July 20, 2009 MRI revealed degenerative disc disease at L3/L4, but with no significant protrusion, and at L4/L5, with moderate to severe protrusion and with formainal stenosis. [AR 463]  In an August 2009 examination, Dr. Gnoyski found Plaintiff had negative straight leg raises bilaterally, symmetrical reflexes, no muscle atrophy, and mildly reduced ("4/5") strength in the right hip flexor and quadriceps muscles. [AR 459-60]  In September 2009, Dr. Gnoyski noted that the addition of methadone to Plaintiff's regimen had not alleviated her symptoms. [AR 467]  In an October 2009 examination, Dr. Gnoyski found Plaintiff had intact attention and concentration, negative straight leg raising tests bilaterally, symmetrical reflexes, and full strength in all muscles of the lower

extremities. [AR 471]

At the ALJ's hearing in November of 2009, Arthur Lorber, M.D., testified as a medical expert that he believed Plaintiff was "significantly addicted to prescription narcotics and other addictive medications." [AR 31]  He testified that he had treated "tens of thousands of patients with back pain and similar degree of degenerative spondylosis" as Plaintiff without high doses of addictive narcotics, and that a patient treated with such medications would generally complain of increased pain and request increasingly higher doses of narcotics because a patient's body becomes habituated to narcotics. [AR 36-37]  Dr. Lorber testified that Plaintiff's long-term treatment with high doses of narcotics was inappropriate given the degree of her pathology. [AR 38]  Dr. Lorber testified that Dr. Gnoyski's June 2008 opinion as to Plaintiff's residual functional capacity, was not supported by the evidence in the record. [AR 33]  Rather, he opined that Plaintiff could: occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk for six hour and sit for six hours; occasionally bend, stoop, kneel, and crouch; never crawl, balance, work at unprotected heights, or climb ladders or scaffolds; and should avoid exposure to constant vibration. [AR 31-32].

In a response letter to Plaintiff's attorney after the hearing, dated June 15, 2010, Dr. Gnoyski indicated that Plaintiff has "chronic persistent pain." [AR 243]  He opined that she had only a "physiological dependency" on opioids, as opposed to an addiction. [AR 243-44].  He stated that due to "the chronicity of her pain, the severity of her pain, [and] the tolerance to pain medications" it was his opinion that Plaintiff remained "markedly debilitated;" specifically, she had decreased ability to stand upright, transfer, and walk, and she could not "perform activities to the point where she can be consistently productive throughout the day and do so in a

competitive fashion so that she can market any services." [AR 244]

Plaintiff testified at the hearing her pain had become increasingly worse since June 2005, and that her pain was mild in June 2005 compared to its current level. [AR 42-43]  She testified that she could stand comfortably for about 10 minutes and could walk for three or four minutes, but on some days was unable to walk. [AR 47]  She further testified that back surgery had been recommended to her but she elected not to have it because she feared it might worsen her condition. [AR 48]

### III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If she is, disability benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that her impairment(s) would have more than a minimal effect on his ability to do basic work activities, she is not eligible for disability benefits.  Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, the claimant is not

presumed to be conclusively disabled.  Step Four then requires the claimant to show that her

impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing

work that she has performed in the past.  If the claimant is able to perform her previous work, the

claimant is not disabled.  *See* 20 C.F.R. § 404.1520(e)&(f).

Finally, if the claimant establishes a *prima facie* case of disability based on the four steps

discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving

that the claimant has the RFC to perform other work in the national economy in view of her age,

education and work experience.  *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity during the

period from her alleged onset date – June 1, 2005 – through her date last insured – December 31,

2007 – or at any time relevant to his decision (Step One). [AR 13]  The ALJ then determined that

Plaintiff had a severe impairment of degenerative disc disease of the lumbar spine (Step Two).

[AR 13]  However, because the ALJ determined that she did not have a impairment or

combination of impairments that meets or equals a listed impairment through the date of last

insured, and all relevant times to his decision (Step Three), the ALJ went on to assess Plaintiff's

RFC from the alleged onset date to the date of last insured. [AR 13-15]

The ALJ evaluated the evidence and found that from the alleged onset date through the

date of last insured, Plaintiff retained the RFC to perform work activities, with normal breaks

and with the following restrictions:  "she could lift 20 pounds occasionally and 10 pounds

frequently; sit 2 hours per occasion and at least 6 hours in an 8-hour day; and stand/walk a total

of 2 hours per occasion and at least 6 hours in an 8-hour day.  The claimant could not climb

10

ladders or scaffolding or work at unprotected heights.  She could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but frequently balance.  The claimant could not operate foot controls with the right lower extremity. Additionally, she should avoid concentrated exposure to extreme cold and vibrations; and should not walk on rocky surfaces" (Step Three). [AR 14]  In light of Plaintiff's RFC, based on the testimony of a vocational expert, the ALJ found that she was able to perform her past relevant work as a card dealer (Step Four). [AR 20] Thus, the ALJ denied Plaintiff's application because she was not under a disability, as defined by the SSA, at Step Four of the sequential evaluation process. [AR 21-22]  On review, the Appeals Council accepted new additional evidence submitted by Plaintiff, but "found no reason" to reconsider the ALJ's decision. [AR 1]

## V.  STANDARD OF REVIEW

We review the SSA Commissioner's decision only to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)(quotation omitted). Thus, "[w]e consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's."  *Id.* (quotation omitted); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007)("we review only the sufficiency of the evidence, not its weight").

# VI.  APPEAL

## A.  Appeal Council

As an initial matter, I first address Plaintiff's contention that the Appeals Council erred when it accepted her new evidence, filed by her attorney after the ALJ's determination, but deemed it insufficient to remand or reverse the ALJ's decision.

Following the ALJ's ruling, Plaintiff's counsel requested a letter from Dr. Gnoyski – Plaintiff's treating physician – responding to the testimony provided by Dr. Lorber, who testified as a medical expert at the hearing in front of the ALJ that he believed Plaintiff was addicted to prescription narcotics, and that Dr. Gnoyski's June 2008 RFC assessment was not supported by the evidence in the record.  [AR 31]  Plaintiff subsequently submitted Dr. Gnoyski's two-page responsive letter, dated June 15, 2010, to the Appeals Council.  As discussed above, that letter opined that Plaintiff had only a "physiological dependency" on opioids, as opposed to an addiction. [AR 243-44]  In addition, Dr. Gnoyski indicated it was his opinion that Plaintiff remained "markedly debilitated" in that she had decreased ability to stand upright, transfer, and walk, and she could not be "be consistently productive throughout the day and do so in a competitive fashion so that she can market any services." [AR 244]  Plaintiff also submitted to the Appeals Council records from Dr. Gynoski for three office visits in April, June, and November, 2008. [AR 496-505]

The Appeals Council received and made this evidence part of the record.  In addition, it received Plaintiff's "letter of contentions" from her attorney, dated June 30, 2010, consisting of a brief in support of Plaintiff's request for review, which sets forth the claims of error raised here. [AR 237-242]  However, the Appeals Council found no reason under their rules – including that

12

the ALJ's decision was not supported by substantial evidence or that new and material evidence shows that the decision is contrary the weight of all the evidence now in the records – to review the ALJ's decision. [AR 1]

To the extent that Plaintiff is asserting that the Appeals Council failed to consider her new evidence, I disagree. The Appeals Council stated it "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." [AR 1]  The Appeals Council found, however, "this information does not provide a basis for changing the Administrative Law Judge's decision." [AR 2] As a result, I conclude that the Appeals Council adequately "considered . . . the additional evidence" meaning that it "evaluate[d] the entire record including the new and material evidence submitted."  20 C.F.R. §404.970(b); *Martinez v. Barnhart,* 444 F.3d 1201, 1207 (10th Cir. 2006)(rejecting the claimant's argument that the Appeals Council erred by failing to specifically discuss the additional evidence submitted and accepted ).

However, because Appeals Council accepted and considered the new evidence, it is a "part of the administrative record to be considered [by this court] when evaluating [the ALJ's] decision for substantial evidence." *Id.* at 1208 (*quoting O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).  As a result, I evaluate the entire record – including Dr. Gynoski's 2010 letter relating his opinions regarding Plaintiff's dependency on opioids and ability to sustain employment, and the 2008 treatment records for three office visits – in conducting my review for substantial evidence on the issues presented*. Id.*  In so doing, I disagree with Plaintiff that the new evidence requires a remand to the ALJ for reconsideration.

**B. Credibility**

Plaintiff argues that the ALJ erred when assessing her credibility with regard to her reported level of pain and her resulting limitations.  She asserts that the ALJ abdicated his responsibility to evaluate the evidence and, instead, "merely adopted the opinion of the medical expert," Dr. Lorber, who opined the Plaintiff's "habituation and addiction to the narcotic drugs prescribed for her pain was driving her," not her pain, when determining her credibility.

When a claimant has a back problem producing pain, as here, the ALJ is "required to consider her assertions of severe pain and to decide whether he believed them." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995)(*quoting Luna v. Bowen,* 834 F.2d 161, 163 (10th Cir. 1987)).  In so doing, the ALJ should consider factors such as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Kepler v. Chater, supra,* 68 F.3d at 391 (*quoting Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)).  When determining Plaintiff's RFC, the ALJ first found that her underlying impairments could reasonably expected to produce her pain and, thus, the ALJ evaluated "the intensity, persistence and limiting effects of the claimant's symptoms" to determine the extent to which they limit her "ability to do basic work activities." [AR 15]  When statements about the effect of her pain are not substantiated by objective medical evidence, the ALJ recognized that he must make a finding on her credibility. [AR 15]

14

As a result, the ALJ summarized Plaintiff's testimony regarding her pain location and levels, as well as her need to lie down during the day and her limitations on her ability to sleep, sit and stand. [AR 15]  The ALJ also summarized Plaintiff's reported limitations on her ability to perform activities of daily living such as cooking, household chores, and grocery shopping. [AR 15]  He also discussed her husband's statement about her diminished ability to perform activities of daily living. [AR 16]

The ALJ then assessed the evidence of record – pursuant to the rulings in *Luna v. Bowen, supra* and Social Security Ruling ("SSR") 96-3p – to determine that Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her pain were not credible.  Specifically, the ALJ ruled that "it appears the clinical findings of record are relatively minimal when compared to the claimant's severe subjective complaints and do not  support the level of symptomology that claimant alleges." [AR 17]  The ALJ referred to evidence in the record that revealed that although Plaintiff was diagnosed with moderate degenerative disc disease, she generally had normal objective exam testing in 2006 and early 2007.  And although her more recent medical evidence showed some strength decrease, it mostly showed "near normal testing and findings." [AR 17]  As late as August 2009 she reported being able to perform activities of daily living, and the ALJ noted that she sat at the hearing for about an hour without getting up. [AR 17]

When discussing the evidence from Dr. Gynoski, Plaintiff's treating physician, the ALJ noted that progress notes after the October 2005 "indicate a waxing and waning of the claimant's symptoms with complaints of severe pain with improvement and exam findings of antalgia and positive straight leg raise." [AR 17]  Then, in December 2005, Dr. Dunn found only mild spasm,

15

limited range of motion of the back, no neurological deficits, and claimant reported she could live with her current symptoms (rather than pursue a surgical option). [AR 18]  The ALJ then noted the lack of findings in a January 2006 examination, and that electrodiagnostic studies in March 2006 revealed no radiculopathy or neuropathy. [AR 18] The ALJ also noted that Plaintiff's gait in 2006 was inconsistent:  in February 2006 she reported no leg pain and her station and gait were normal, in June 2006 she had an antalgic gait and was favoring her right side, and in September of 2006 she reported walking better overall. [AR 18]  In 2007, Plaintiff indicated she was having problems performing activities of daily living during a March appointment, but no significant exam findings were reported, and in June while she had some antalgia on the right, she was able to walk on her heels and toes and straight leg raise was negative bilaterally. [AR 18]  After a MRI and discography in December 2007, a January 2008 examination showed she was neurologically intact with no motor or sensory deficits, and strength of the bilateral lower extremities was 5/5.  [AR 18]  As such, the ALJ found that such records "do not reflect any significant clinical findings that would support the claimant's severe subjective complaints" or Dr. Gnoyski's opinion in June 2008 indicating that Plaintiff was unable to work. [AR 18]

Plaintiff argues that the ALJ's finding on her credibility was an abuse of discretion.   In so doing, Plaintiff refers to the following evidence.  First, she asserts that the ALJ did not consider Dr. Gnoyski's letter – dated June of 2010 and made part of the record after the ALJ's decision – indicating that Plaintiff's pathology does produce chronic pain, and that she has tried many different treatments without relief.   In addition, the ALJ did not consider Plaintiff's treatment records from 2008 – when he noted that Dr. Gnoyski's RFC assessment was

apparently not supported by an examination or treatment records – because they were also not

before the ALJ at that time.  Likewise, the ALJ's determination that Plaintiff was able to sit

during the hearing was not supported by the record, as she actually needed to stand during the

hearing.  Finally, she notes  her indications in the medical record that she could live with her

symptoms were based on her reluctance to surgery as a treatment option.

I conclude, however, that the ALJ's order reveals an adequate assessment of Plaintiff's

credibility.  To the extent that Plaintiff argues that the ALJ merely adopted the opinion of the Dr.

Lorber, and the ALJ failed to evaluate the evidence, I disagree.  The record is clear that the

ALJ's credibility determination was supported by substantial evidence unrelated to the opinion

of Dr. Lorber.  *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)(ruling that in assessing

credibility, all that is required is that the ALJ sets forth the specific evidence he relies on in

evaluating the claimant's credibility; it does not require a formalistic factor-by-factor recitation

of the evidence).

## C.  Medical Opinion Evidence

Plaintiff next argues that the ALJ did not properly evaluate the medical opinion evidence;

specifically, she contends that the ALJ improperly discounted the opinion of Dr. Gnoyski – as a

treating physician – by only giving it little weight and, instead, giving greater weight to the

opinions of non-examining physicians.

The ALJ here found that Dr. Gnoyski's opinions were not entitled to controlling weight

by ruling that they were not well-supported by medically acceptable clinical and laboratory

diagnostic techniques.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20

C.F.R. § 404.1527.  While an ALJ need not give "controlling weight" to the opinion of a treating

17

physician, such medical opinions are still entitled to deference and must be weighed using the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (*citing* 20 C.F.R. § 404.1527(c)).  It is not necessary for the ALJ to address each factor expressly or at length.  *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (observing that "not every factor for weighing opinion evidence will apply in every case"). Rather, what matters is that the decision is "sufficiently specific to make clear to any subsequent reviewer[ ] the weight the adjudicator gave to the . . . opinion and the reasons for that weight." *Id.* (quotation omitted).

The ALJ found that Dr. Gnoyski's opinions – as set forth in his assessment of her RFC limitations and his conclusion that she was unable to work  – were unpersuasive.  In a form entitled Medical Source Statement of Ability to Work-Related Activities (Physical), and dated June 23, 2008, Dr. Gynoski indicated that Plaintiff could:  lift 10 occasionally; sit for two hours (20 minutes continuously), stand for one hour (15 minutes continuously), and walk for one hour (15 minutes continuously) in an eight-hour workday.  He also assessed limitations related to her ability to reach, push/pull, and use foot controls; climb stairs and ramps, balance, and stoop; and climb ladders or scaffolds, kneel, crouch, or crawl. [AR 441-47, 490-95]   Notably, he opined that Plaintiff had "too much pain" to concentrate or sit/stand for prolonged periods, and he concluded she was "unable to work." [AR 446]

18

The ALJ based his rejection of Dr. Gynoki's opinions on his conclusion that the medical records, as discussed above, did not reflect any significant clinical findings that would support it. The ALJ found that Dr. Gnoyski's RFC assessment and opinions of Plaintiff's capacity to work were "not consistent with the treatment records, exam findings, and other objective evidence of record, including Dr. Gnoyski's own treatment records." [AR 18]   The ALJ determined that:

> [w]hile examinations certainly show evidence of a degenerative back condition with subjective complaints of chronic pain, diagnostic imaging, including repeat and recent MRIs, fails to show any significant findings or pathology that would warrant such severe work restrictions.  The claimant has at most moderate degenerative disc disease with no diagnostic neuropathy or radiculopathy. [AR 18]

In addition, the ALJ found that Dr. Gnoyski's opinion that "the claimant experiences too much pain to concentrate" is not supported by the record, which consists of numerous examinations that include findings of normal speech, mood and affect, including Dr. Gnoyski's own findings that her cognitive functioning was normal and her thought processes were not impaired. [AR 18-19]

The ALJ further discounted Dr. Gnoyski's RFC opinion on the basis that:  he is not a specialist in orthopedics; the RFC assessment was dated June 2008, after her last date of insured, and was apparently without a supporting examination or treatment records as the "record appears to be void of any treating source medical evidence from 2008;" and Dr. Gnoyski "has not demonstrated an understanding of the [SSA] disability program and its evidentiary requirements." [AR 19]  As a result, the ALJ gave "little weight to this assessment and finds it inconsistent with the better explained assessment for the medical expert at the hearing, which is considered more persuasive." [AR 19]

Plaintiff argues that the ALJ's rejection of Dr. Gnoyski's June 2008 RFC assessment constitutes reversible error on the basis that the factors for assessing whether to give his opinion deference, as set forth in 20 C.F.R. § 404.1527(c), weigh in favor of accepting his opinion over the opinions of non-examining physicians.  For example, Plaintiff  notes that Dr. Gnoyski has treated Plaintiff since August of 2004, and that although he is not an orthopedist, Dr. Gnoyski's specialty is physical medicine and rehabilitation which "deals specifically with patents such as claimant, who need to learn to manage their pain," not just provide surgical options.

However, it is not this court's job to re-weigh the evidence.  My review of the record reveals that the evidence relied upon by the ALJ supports his conclusion that Dr. Gnoyski's June 2008 opinions related to Plaintiff's ability to work are not supported by medically acceptable clinical and laboratory diagnostic techniques.  I reject Plaintiff's assertion to the extent she argues that Dr. Gnoyski's opinion is, in fact consistent with the medical evidence because it is clear from the record that Plaintiff suffers from pain associated with the objective diagnosis of degenerative disc disease of her lumbar spine.  The ALJ found, however, while Plaintiff does in fact suffer pain associated with her diagnosed degenerative disc disease, the record evidence does not support that her pain rises to the level of limitation expressed by Dr. Gnoyski's RFC assessment in June of 2008.  I conclude that the ALJ's order provides adequate "specific, legitimate reasons" for rejecting Dr. Gnoyski's June 2008 opinion.  *See Watkins v. Barnhart, supra*, 350 F.3d at 1301; *Castellano v. Secretary of Health & Human Services*, 6 F.3d 1027, 1029 (10th Cir. 1994)(a treating physician's opinion may be rejected if his conclusions are not supported by specific findings).

**D.  RFC Determination**

Finally, Plaintiff argues that the ALJ's RFC determination is not supported by the evidence in the record.  Specifically, she maintains that the hypothetical questions posed to the vocational expert at the hearing "did not include all of her [RFC] limitations" as opined by Dr. Gnoyski and, as such, the conclusion that she could perform her past relevant work – based on an RFC assessed by the state agency physician (Dr. LoGalbo) and the medical expert's testimony at the hearing (Dr. Lorber) – is not supported by the evidence.  However, because I have found no error by the ALJ in assessing the opinion evidence related to Plaintiff's RFC – as discussed above – Plaintiff's argument here is unavailing.


ACCORDINGLY,  I AFFIRM the SSA Commissioner's final order.


Dated: October    23   , 2012, in Denver, Colorado.


BY THE COURT:


  s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE